Sealed

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **11-80598 CIV-MARRA**

FILED by _____ D.C.
MAY 20 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA – MIAMI

UNITED STATES OF AMERICA,
ex rel. Dr. Kenneth Beer,

    Plaintiffs,

vs.

TENET HEALTHCARE CORPORATION,

    Defendant.
_____/

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**FILED UNDER SEAL**

## I.   INTRODUCTION

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from violations of the federal False Claims Act, 31 U.S.C. §§ 3729-32, as amended, Pub.L 99-562, 100 Stat. 3153 (1986).

2. The False Claims Act, originally enacted during the Civil War and substantially amended by the False Claims Amendments Act of 1986, prohibits any person from submitting false or fraudulent claims to the United States Government for approval or payment.

3. Any person having knowledge of violations of the False Claims Act may bring an action in federal district court on behalf of himself and the United States Government, as well as to share in any recovery. The complaint is to be filed under seal for 60 days (without service on the defendant during the 60 day period) to enable the Government to (1) conduct its own investigation without the knowledge of the defendant and (2) determine

whether to join the suit.

4. Based on these provisions, plaintiff/relator Dr. Kenneth Beer seeks through this action to recover damages and civil penalties arising from false claims for payments submitted or caused to be submitted by the defendants to the United States Government through Medicare, a federally-funded medical insurance program for the elderly. Plaintiff/relator estimates the amount of actual damage suffered by the Government to be in excess of $1 million.

5. As required under the False Claims Act, 31 U.S.C. § 3730(b)(2), plaintiff/relator will provide to the Attorney General of the United States and the United States Attorney a statement of all material evidence and information related to the complaint.

## II. PARTIES

6. Plaintiff/relator Dr. Kenneth Beer is a resident of Palm Beach County, Florida. He is a board certified dermatologist. In addition to being a board-certified dermatologist with privileges at two Tenet hospitals, Dr. Beer also served on the Executive Committee of Good Samaritan Hospital in West Palm Beach, Florida. Beer brings this action for violations of 42 U.S.C. § 1395nn *et seq.* and 31 U.S.C. § 3729 *et seq.* on behalf of himself and the United States Government pursuant to 31 U.S.C. § 3730(b)(1) and (b)(2).

7. Defendant Tenet Healthcare System ("Tenet") is a for-profit corporation incorporated in the State of Nevada with its principal place of business at 1445 Ross Avenue, Suite 1400, Dallas, Texas 75202. Defendant Tenet is an investor-owned healthcare services company whose subsidiaries and affiliates operate fifty (50) general hospitals with a total of 13,584 licensed beds, as well as related healthcare entities.

Defendant Tenet operates eight (8) hospitals in the State of Florida, including Good Samaritan Medical Center, Palm Beach Gardens Medical Center, and Delray Medical Center in Palm Beach County, Florida. Defendant Tenet also owns various physician groups.

### III. JURISDICTION AND VENUE

8. This is a civil action arising under the laws of the United States to redress violations of the False Claims Act, 31 U.S.C. §§ 3729-3232. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331, and pursuant to 31 U.S.C. § 3732, that specifically confers jurisdiction on this Court for actions brought pursuant to §§ 3729 and 3730 of Title 31.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (2) because Defendant has offices in the Southern District of Florida, and has performed numerous acts proscribed by 31 U.S.C. § 3729 *et seq.* within the Southern District of Florida.

### IV. GOVERNING LAW--FALSE CLAIMS ACT

10. The False Claims Act provides, in pertinent part, that:

> (a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government;. . . or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,
> ***
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of

> damages which the Government sustains because of the act of that person . . . .
>
> (b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729.

11. While the False Claims Act imposes liability only when the claimant acts "knowingly," it does not require that the person submitting the claim have actual knowledge that the claim is false. A person who acts in reckless disregard or in deliberate ignorance of the truth or falsity of the information, also can be found liable under the Act. 31 U.S.C. § 3729(b).

12. In sum, the False Claims Act imposes liability on any person who submits a claim to the federal government that he or she knows (or should know) is false.

13. The United States, through the Department of Health and Human Services ("HHS"), administers federally-financed health insurance systems for persons age 65 and over and those who are disabled. The Hospital Insurance Program for the Aged and Disabled is established by Part A ("Medicare Part A Program") and the Supplementary Medical Insurance Program is established by Part B ("Medicare Part B Program"), Title XVIII, of the Social Security Act under 42 U.S.C. § 1395, et seq.

14. Medicare Part A helps cover inpatient care, and Medicare Part B helps cover medically necessary doctors and other medical services that Part A does not cover.

15. Claims are submitted to Medicare through the use of a HCFA 1500 form. The provider of the service is required as a condition for payment to represent that the

service for which the provider seeks payment was necessary and was rendered to the beneficiary. The service rendered is indicated on the form using five digit numerical codes formulated by the American Medical Association and contained in its Physicians' Current Procedural Terminology Manual ("CPT").

## V.    FACTUAL ALLEGATIONS

16.    Defendant engaged in conduct prohibited under the False Claims Act. This conduct, in short, involved (a) Defendant Tenet, through its physicians groups, billing for mid-level consultations without the necessary physician referral, (b) Defendant Tenet using revenue goals, rather than medical necessity, to fill hospital beds, (c) Defendant Tenet requiring pulmonary/critical care consultations for every single patient admitted to its intensive care units, regardless of the medical necessity for such consultations. These consultations were a *quid pro quo* for the consulting physicians and a *de facto* payment in exchange for providing coverage for the intensive care units. Payment for this coverage should have been made by tenet; and (d) Defendant Tenet's knowing employment of "virtual" physicians to staff its hospitals including its "stroke centers" and intensive care units. These physicians do not perform the physical examination and requisite interactions to justify the high level billing that is paid by Medicare. In some instances, the virtual physician consists of a television monitor in front of a patient whereby a physician in another state asks the patients to perform a series of movements, but no physical examination is performed.

### A.    UPCODING

17.    CPT 99243 is for a mid-level consult. This code can only be utilized with a physician referral to a specialist. Defendant Tenet employed physicians routinely

employed this code instead of the more appropriate office visit code.

18.     This consult costs Medicare more than an office visit (a visit not initiated by a physician referral).

19.     Defendant Tenet knowingly allows and abets members of its physician groups in utilizing CPT 99243 in the absence of a physician referral.

20.     Defendant Tenet knowingly submits, or authorizes others on its behalf to submit, upcoded bills to Medicare for reimbursement.

**B.      HOSPITAL BEDS AND DIAGNOSTIC PROCEDURES**

21.     Defendant Tenet utilizes coercive measures to ensure that its hospital beds are full and its revenues are substantial. In addition, Defendant Tenet employs coercive measures to ensure that diagnostic procedures are performed to maximize its profit.

22.     By keeping its hospital beds full and maximizing expensive in-patient care, Defendant Tenet, in turn, maximizes its profits. By maximizing its use of diagnostic facilities and operating rooms, Defendant Tenet seeks to increase its profit.

23.     Specifically, Defendant Tenet utilizes bed censuses to track the utilized beds in its hospitals and sets "goals" for the percentage of those beds to be filled. These goals are actually mandates.

24.     In order to meet those "goals", Defendant Tenet uses bed utilization rather than quality of care or outcome measurement as a means of measuring a physician's performance. By using revenue generation rather than outcomes measurement, Defendant Tenet knowingly caused the Medicare programs to inflate payments to Defendant Tenet. The message to the remaining and newly-hired hospitalists was clear, "fill beds." The message was heard as Defendant Tenet now consistently meets its bed census "goals".

These goals are posted in several areas of the hospital for all employees to see and note.

25.  Defendant Tenet knowingly submits, or authorizes others on its behalf to submit, bills for these unnecessary hospital stays to Medicare for reimbursement.

### C.  MANDATORY CONSULTS

26.  Defendant Tenet negotiates contracts with various outside physician groups to provide services to its hospitals.

27.  As part of its negotiations, Defendant Tenet requires its contracting pulmonary/critical care groups to order patients to have mandatory consults with a pulmonary doctor for every admission to the intensive care unit. These consultations are part of a *quid pro quo* arrangement that generates consultations for the intensive care physicians in exchange for coverage of Defendant Tenet's Intensive Care units. However, this care is frequently "virtual" (e.g. the patient is not examined by the billing physician but instead sees them on a television monitor), thus not fulfilling the criteria for high level acuity examinations billed to Medicare. Moreover, Defendant Tenet eliminated the ability of admitting physicians to request these consultations and instead made them mandatory at great expense to Medicare.

28.  Many of these consults are medically unnecessary; all are expensive to Medicare.

29.  Defendant Tenet knowingly submits, or authorizes others on its behalf to submit, bills for these unnecessary consults to Medicare for reimbursement.

### D.  VIRTUAL PHYSICIANS

30.  Defendant Tenet knowingly employs "virtual" physicians to staff its hospitals including its "stroke centers" and intensive care units.

31. These physicians do not perform the physical examination and requisite interactions to justify the high level billing that is paid by Medicare.

32. In some instances, the virtual physician consists of a television monitor in front of a patient whereby a physician in another state asks the patients to perform a series of movements, but no physical examination is performed.

33. Defendant Tenet knowingly submits, or authorizes others on its behalf to submit, bills for these improper examinations to Medicare for reimbursement.

## COUNT ONE

### FALSE CLAIMS ACT VIOLATIONS
### 31 U.S.C. §§ 3729(a)(1), (a)(2), and (a)(7)

34. Paragraphs 1 through 33 are incorporated into Count One as if fully set forth herein.

35. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended, Pub. L. 99-562, 100 Stat. 3153 (1986).

36. Through the acts described above, defendant and its agents, employees and co-conspirators knowingly presented and caused to be presented to the United States, its officers or employees, false and fraudulent claims, and knowingly failed to disclose material facts, in order to obtain payment and approval under the Medicare program.

37. Through the acts described above, defendant and its agents, employees and co-conspirators knowingly made, used and/or caused to be made or used false records and statements, that also omitted material facts, in order to induce the United States to approve and pay false and fraudulent claims under the Medicare program.

38. Plaintiff United States, unaware of the falsity of the claims, records, and

statements made and submitted by defendant and its agents, employees and co-conspirators, and as a result thereof, paid money to defendant under the Medicare program for expenses claimed by the defendant that were not related to the medical care of Medicare beneficiaries, that the Government otherwise would not have paid.

39. By reason of the payments made by the United States to the Defendant as a result of Defendant's fraud, the United States Government has been damaged in substantial amounts.

## PRAYER

**WHEREFORE**, Plaintiff/relator prays for judgment against Defendant as follows:

1. That Defendant be ordered to cease and desist from violating 31 U.S.C. § 3729;

2. That this Court enter judgment against the Defendant in an amount equal to three times the amount of damages the United States Government has sustained because of defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

3. That Plaintiff/relator be awarded the maximum amount allowed pursuant to the False Claims Act;

4. That Plaintiff/relator be awarded all costs of this action, including attorneys' fees and court costs; and

5. That Plaintiff/relator recover such other relief as the Court deems just and proper.

Respectfully submitted,

GROSSMAN ROTH, P.A.
2525 Ponce de Leon Blvd.
Suite 1150
Coral Gables, FL 33134
(305) 442-8666 / Fax (305) 285-1668
sem@grossmanroth.com

By: _____
SETH MILES
Fla. Bar. No. 0385530